IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROSEMARIE MCMULLEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. 06-566-JJF |
| v. | ) | |
| | ) | |
| BOYS AND GIRLS CLUBS | ) | |
| OF DELAWARE, INC., | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |

## ANSWER TO THE COMPLAINT

The Defendant, Boys and Girls Clubs of Delaware, Inc. ("BGC"), through undersigned counsel, responds to the allegations of the Complaint filed against it by Rosemarie McMullen ("McMullen") as follows (BGC's responses are in bold typeface):

### INTRODUCTION

1. Plaintiff, Rosemarie McMullen, (hereinafter "Plaintiff" or "McMullen") brings this action under the Delaware Discrimination in Employment Act, as amended for employment discrimination, 19 Del. C. §710, *et seq.* and the Civil Rights Act of 1964 as amended, 42 U.S.C. §2000e *et seq.* (Title VII") and specifically as amended by the Pregnancy Discrimination Act of 1978, 42 U.S.C. §2000e(k) (the "PDA"). Plaintiff seeks back pay, front pay, compensatory and punitive damages and costs and attorneys' fees from Defendant, Boys and Girls Club of Delaware, Inc. (hereinafter "Defendant"). Plaintiff further seeks compensation for Defendant's unlawful discrimination against her because of her pregnancy.

**RESPONSE: BGC admits that McMullen purports to bring an action under the laws and seeking the relief specified in paragraph 1 of the Complaint. BGC denies that McMullen's Complaint against it is valid and further denies that McMullen is entitled to the relief sought in her Complaint.**

## JURISDICTION AND VENUE

2.    This action is brought pursuant to the Delaware Discrimination in Employment Act and the Civil Rights Act of 1964 as amended, for employment discrimination. Jurisdiction exists by virtue of 19 Del. C. § 714(a), as well as, 42 U.S.C. §2000e *et seq.* (Title VII), and specifically amended by the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e(k) (the "PDA"). Equitable and other relief are also sought under 19 Del. C. §715. An additional jurisdictional basis for Plaintiff's state law claims exists under the principles of pendent and supplemental jurisdiction and 28 U.S.C. §1367.

**RESPONSE: BGC admits that McMullen purports to bring an action under the laws and seeking the relief specified in paragraph 2 of the Complaint. Paragraph 2 otherwise states conclusions of law to which no response is required.**

## PARTIES

3.    Plaintiff was employed by the Boys and Girls Clubs of Delaware from March 1, 2000 through April 19, 2005. At all times relevant to the complaint the Plaintiff resided in New Castle County Delaware.

**RESPONSE: BGC admits that McMullen was employed by BGC from March 1, 2000 through April 19, 2005. BGC is without information sufficient to form a belief as to the truth of the second sentence of paragraph 3 of the Complaint, and, accordingly, it is denied.**

4.    Defendant does business and is incorporated in the State of Delaware. Service of process upon the Boys and Girls Clubs of Delaware, Inc. can be made by serving the Boys & Girls Clubs of Delaware, Inc. at 669 South Union Street, Wilmington, Delaware 19806.

**RESPONSE: BGC admits the allegations of paragraph 4 of the Complaint.**

## CONDITIONS PRECEDENT

5.      Plaintiff has fulfilled all conditions precedent to the institution of this action under 19 Del. C. § 710, et seq. and 42 U.S.C. § 2000e. On March 10, 2005, she timely filed charges with the Delaware Department of Labor and the Equal Employment Opportunity Commission. A true and correct copy of the June 14, 2006 Right to Sue letter is attached hereto and incorporated herein by reference as Exhibit "A".

**RESPONSE: BGC admits that Exhibit A attached to the Complaint purports to be a Right to Sue letter from the Equal Employment Opportunity Commission dated June 14, 2006. BGC is without information sufficient to form a belief as to the truth of McMullen's allegation regarding the filing of charges with the Delaware Department of Labor and the Equal Employment Opportunity Commission. Paragraph 5 otherwise states conclusions of law to which no response is required.**

## FACTUAL BACKGROUND

6.      Plaintiff began her employment with Defendant on or about February 28, 2000. Plaintiff was hired full-time at the Jennie Smith Boys and Girls Club, School-Site Childcare Program. Thereafter, Plaintiff became a Program Director for the Brick Mill location in New Castle County in August 2004. At all relevant times, Plaintiff worked for Defendant as a Program Director for the Brick Mill location.

**RESPONSE: BGC admits that McMullen commenced employment with BGC on March 1, 2000 at the Jennie Smith School. She subsequently became Program Director at the Brandywine Springs location, then became a Program Director at the Brick Mill location in New Castle County in August 2004. BGC further admits that McMullen worked as a Program Director at the Brick Mill location until she took leave in March 2005. BGC otherwise denies the allegations of paragraph 6 of the Complaint.**

7. On or about September 27, 2004, Plaintiff, who was almost four months pregnant, requested FMLA paperwork from Defendant because of the pregnancy. Thereafter, Plaintiff had her doctor, Dr. Helen McCullough, complete the FMLA forms and Plaintiff returned the forms to Joel Riley (hereinafter "Riley") in Human Resources on or about September 30, 2004. The FMLA forms indicated that Plaintiff was almost four months pregnant and that she would be out of work from date of delivery until approximately 6-8 weeks post partum barring any complications.

**RESPONSE: BGC is without information sufficient to form a belief as to the truth of the first two sentences of paragraph 7 and, accordingly, they are denied. The last sentence of paragraph 7 attempts to characterize the contents of FMLA forms, which documents speak for themselves.**

8. On or about October. 18, 2004, Plaintiff's doctor issued a note which stated, "advisable for her [Plaintiff] not to work any overtime." Plaintiff provided this doctor's note to Marianne Olmstead (hereinafter "Olmstead"), Plaintiff's supervisor and School Site Supervisor, and Riley. In spite of the issuance of this medical documentation, Olmstead instructed Plaintiff to continue performing extra duties requiring Plaintiff to work overtime.

**RESPONSE: The first sentence of paragraph 8 attempts to characterize the contents of a doctor's note, which document, if it exists, speaks for itself. BGC denies the remaining allegations of paragraph 8 of the Complaint.**

9. On or about January 31, 2005, Plaintiff went into work with contractions and worked her entire shift. Since Plaintiff was having so many contractions which were two (2) minutes apart, Plaintiff decided that she should give all of the work that she was currently responsible for to her supervisor, Olmstead, who worked in the main office in Wilmington. Plaintiff gave Olmstead the petty cash for food, the blue binder concerning site information, Plaintiff's desk keys, phone, resumes, and other items.

**RESPONSE: BGC denies the allegations of paragraph 9 of the Complaint.**

10. Plaintiff drove herself to the Christiana Hospital after her shift. The Hospital provided Plaintiff with a doctor's note instructing her not to return to work until February 3, 2005. Plaintiff provided this doctor's note to Olmstead and Riley.

**RESPONSE: BGC is without information sufficient to form a belief as to the truth of the first sentence of paragraph 10, and, accordingly, it is denied. The second sentence of paragraph 10 attempts to characterize the contents of a doctor's note, which document, if it exists, speaks for itself. BGC denies the allegations of the third sentence of paragraph 10 of the Complaint.**

11. In or around January 2005, Defendant was looking to hire a new assistant director because Amy Shepherd (hereinafter "Shepherd") had officially given two weeks' notice that she was resigning. Once Shepherd told Olmstead she was pregnant, Olmstead advised Shepherd that she was no longer needed.

**RESPONSE: BGC admits that Amy Shepherd gave BGC two weeks' notice of her resignation in or around January 2005. BGC further admits that it sought to hire a replacement for Ms. Shepherd in light of her resignation. BGC otherwise denies the allegations of paragraph 11 of the Complaint.**

12. On or about February 3, 2005, Plaintiff returned to work and learned that Olmstead had scheduled ice skating and bowling field trips for the children at the Boys and Girls Clubs, Inc.

**RESPONSE: BGC denies the allegations of paragraph 12 of the Complaint.**

13. Plaintiff expressed to Olmstead her concern that she should not be alone with the children during field trips for ice skating and bowling because Plaintiff was eight (8) months pregnant and having complications with her pregnancy. Plaintiff was not able to participate in such physical activity.

5

**RESPONSE: BGC denies the allegations of paragraph 13 of the Complaint.**

14.   Plaintiff, genuinely concerned about the safety of the children, as well as the desires of the children's parents, suggested to Olmstead that another employee take the children on the field trip or, in the alternative, that another employee assist Plaintiff with the children during the field trip. Olmstead denied Plaintiff's requests. Instead, Olmstead instructed Plaintiff not to return to work until she produced a doctor's note indicating exactly what Plaintiff could and could not do while at work.

**RESPONSE: BGC admits that Plaintiff expressed concern about her condition and was instructed by Olmstead to secure a doctor's note identifying any work limitation. BGC otherwise denies the allegations of paragraph 14 of the Complaint.**

15.   On or about February 10, 2005, Plaintiff received an additional medical note from her doctor indicating that she should stay out of work "until she reached the 36-week mark for the safety and welfare of her child" which would have been February 21, 2005.

**RESPONSE: Paragraph 15 of the Complaint attempts to characterize the contents of a doctor's note, which document speaks for itself. BGC is without information sufficient to form a belief as to the truth of the remaining allegations of paragraph 15, and, accordingly, they are denied.**

16.   Plaintiff contacted Olmstead on or about February 10, 2005 to advise that she was not able to return to work until February 21, 2005 and also that Plaintiff's part-time employee, Melissa McCafferty, wanted to resign. Olmstead responded, "You all just need to tell me if you want to work or not."

**RESPONSE:   BGC denies that paragraph 16 of the Complaint accurately characterizes the conversation between Plaintiff and Olmstead.**

17. On or about February 11, 2005, Plaintiff faxed the additional medical documentation to Riley in Human Resources and to Olmstead.

**RESPONSE: BGC admits that it received a fax on February 11, 2005 from Plaintiff addressed to Riley and Olmstead which included a doctor's note. The allegations of paragraph 17 of the Complaint are otherwise denied.**

18. On or about February 14, 2005 at around 3 p.m., Olmstead called Plaintiff and advised her that under the circumstances and due to the length of time Plaintiff would be unable to work, Defendant has decided to replace Plaintiff. Plaintiff was in complete shock. Plaintiff responded, "Okay, can I call you back?"

**RESPONSE: BGC denies that paragraph 18 of the Complaint accurately characterizes the conversation between Plaintiff and Olmstead.**

19. Approximately an hour later, Plaintiff contacted Olmstead and asked her why Olmstead was, "doing this to me" and "what does this mean for my job?" Olmstead told Plaintiff that when Plaintiff returned to work she would be "a sub" and float from site to site whenever they needed Plaintiff. Olmstead also advised Plaintiff that Defendant was just "looking out" for Plaintiff since she was going to be a new mom. Plaintiff responded, "How was that helping me?" Plaintiff also stated that she intended to contact George Kurpanski, (hereinafter "Kurpanski"), CEO of the Boys & Girls Club of Delaware to discuss the matter.

**RESPONSE: BGC denies that paragraph 19 of the Complaint accurately characterizes the conversation between Plaintiff and Olmstead.**

20. Shortly thereafter, Plaintiff contacted Kurpanski and left a message. Kurpanski returned Plaintiff's call at approximately 6:00 or 7:00 p.m. on February 14, 2005. Plaintiff explained to him her situation and that she could not believe after six (6) years of dedication to the Boys and Girls Clubs of Delaware she was being treated this way. Kurpanski advised that he would look into the situation and call Plaintiff back.

**RESPONSE: BGC admits that Mr. Krupanski telephoned McMullen on or about February 14, 2005, in response to a message he received from her. BGC denies that the allegations of paragraph 20 of the Complaint accurately characterize McMullen's telephone conversation with Mr. Krupanski.**

21. As of the date of filing this Complaint, Plaintiff has not received a return call from Kurpanski.

**RESPONSE: BGC admits that Mr. Krupanski did not call McMullen again after their February 15, 2005 telephone conversation because he informed her during that conversation that he would call her back only if he learned that she had not been offered a position with the same title, responsibilities and salary as the position she held before her maternity leave. BGC otherwise denies the allegations of paragraph 21 of the Complaint.**

22. On the evening of February 14, 2005, Plaintiff went into labor. Plaintiff's daughter was born the next day approximately five (5) weeks early. Plaintiff's original due date was March 19, 2005. However, due to her premature delivery, Plaintiff's daughter did not pass her hearing test and was placed in Neonatal Intensive Care Unit. Additionally, the baby's sugar level dropped very low and she had a low body temperature.

**RESPONSE: BGC is without information sufficient to form a belief as to the truth of the allegations of paragraph 22 of the Complaint, and, accordingly, they are denied.**

23. On or about February 16, 2005, Plaintiff contacted Riley and spoke with his secretary, Robin.

**RESPONSE: BGC is without information sufficient to form a belief as to the truth of the allegations of paragraph 23 of the Complaint, and, accordingly, they are denied.**

24. On or about March 29, 2005, Plaintiff received a letter in the mail from Olmstead. The letter included a job description for the position of School Site Child Care Director of Boys and Girls Club of Delaware, Inc. Olmstead explained in the letter that once Plaintiff was released

by her physician to return to work, her assignment would be as a "Program Director for the South Dover and Booker T. Washington Elementary School Site Child Care programs in Kent County and the Woodbridge School Site Child Care Summer program in Sussex County."

**RESPONSE: Paragraph 24 of the Complaint attempts to characterize the contents of a letter, which document speaks for itself.**

25. Defendant did not reassign Plaintiff to the same terms and conditions of her employment that she had prior to her maternity leave.

**RESPONSE: BGC denies the allegations of paragraph 25 of the Complaint.**

26. Plaintiff's job title prior to her medical leave of absence was that of a Program Director at the Brick Mill location in New Castle County. After her pregnancy leave, however, Olmstead advised Plaintiff that she would be a School Site Child Care Director for three different locations in Kent and Sussex Counties.

**RESPONSE: BGC admits that her job title prior to her leave was that of Program Director at the Brick Mill location in New Castle County, and that McMullen was offered the position of Program Director at the Smyrna location. After she declined that offer, BGC offered Plaintiff the position of Program Director for three locations in Kent and Sussex County. BGC avers that it uses the term "School Site Director" interchangeably with "Program Director." BGC otherwise denies the allegations of paragraph 26 of the Complaint.**

27. As Program Director for the Brick Mill location, Plaintiff was not required to implement youth programs; rather, Plaintiff planned the programs. In addition, Plaintiff did not develop lesson plans, complete paperwork for petty cash nor was she responsible for food shopping for the program. All of the aforementioned tasks were completed by Shepherd when Plaintiff served as Program Director. However, all of these responsibilities are included as job responsibilities for a Site Director, the position to which Plaintiff was reassigned.

9

**RESPONSE:** BGC denies that paragraph 27 of the Complaint accurately describes the job responsibilities of the positions to which it refers or Plaintiff's performance in those positions.

28. As Program Director for the Brick Mill location, Plaintiff had an Assistant Director who assisted her in managing the program.

**RESPONSE:** BGC admits that there was an Assistant Director at the Brick Mill location. BGC otherwise denies the allegations of paragraph 28 of the Complaint.

29. As Site Director for the locations in Kent and Sussex counties, Plaintiff would no longer have an Assistant Director because these locations, in March 2005, had 30 or less children.

**RESPONSE:** BGC admits that there was not a full-time Assistant Director at the Kent and Sussex County locations due to the smaller number of children at these locations. BGC avers that part-time staff was available to assist the Program Director at these locations. BGC otherwise denies the allegations of paragraph 29 of the Complaint.

30. As Site Director for the locations in Kent and Sussex counties, Plaintiff was required to work as Site Director for three separate programs in two different counties in the State of Delaware: the South Dover and Booker T. Washington Elementary School Site Child Care programs in Kent County and the Woodbridge School Site Child Care Summer Program in Sussex County. Before the reassignment, Plaintiff was responsible for only one site located in New Castle County.

**RESPONSE:** BGC avers that Plaintiff was offered the position referred to in paragraph 30 of the Complaint after she declined the offer of Program Director at the Smyrna location. BGC admits the offered position involved three locations, and that her previous position was at one location. BGC otherwise denies the allegations of paragraph 30 of the Complaint.

31. Plaintiff was forced to resign from her employment with Defendant. On or about April 5, 2005, Plaintiff sent a memo of resignation effective April 19, 2005 to Kurpanski and copied Maria Hazzard, Olmstead and Riley.

**RESPONSE: BGC admits that McMullen tendered a memo of resignation addressed to Mr. Krupanski indicating copies to Maria Hazzard, Olmstead and Riley on or about April 5, 2005 stating she would terminate her employment effective April 19, 2005. BGC otherwise denies the allegations of paragraph 31 of the Complaint.**

32. On or about April 18, 2005, Plaintiff had her exit interview with Ellen McLaine (hereinafter "McLaine"). During her exit interview with McLaine, Plaintiff explained the allegations set forth in this Complaint. Plaintiff also expressed to McLaine that she wished to continue working with Defendant. However, she was extremely disappointed with how the Defendant handled her pregnancy. Plaintiff advised McLaine that she was disappointed and hurt because of Defendant's lack of appreciation for Plaintiff's years of dedication to the Boys and Girls Clubs of Delaware. Plaintiff explained that she spoke with Kurpanski about the situation but he did not even follow-up with Plaintiff by returning her phone call.

**RESPONSE: BGC admits that McMullen met with Ms. McLaine on or about April 18, 2005. BGC denies that the allegations of paragraph 32 of the Complaint accurately characterize McMullen's meeting with Ms. McLaine.**

33. McLaine's response was that, "The programs had to continue to run." McLaine also told Plaintiff that she would tell "George" to give her a call.

**RESPONSE: BGC denies that the allegations of paragraph 33 of the Complaint accurately characterize McMullen's meeting with Ms. McLaine.**

34. Based on information and belief, other non-pregnant employees of Defendant have been placed on medical leaves of absences and/or approved Family Medical Leave status

11

and were afforded the opportunity to return to the same terms and conditions of their employment once released to work regular duty.

**RESPONSE: BGC admits that it handles requests for leave and placement of employees after leave in accordance with applicable law. BGC otherwise denies the allegations of paragraph 34 of the Complaint.**

35. Plaintiff's performance evaluations from July 19, 2002 and September 2003 through September 2004 indicate that Plaintiff consistently exceeded expectations as a Program Director.

**RESPONSE: BGC admits that Plaintiff received good performance evaluations. BGC otherwise denies the allegations of paragraph 35 of the Complaint.**

### COUNT I
*(Employment Discrimination in violation of 19 Del. C. § 710, et seq. and 42 U.S.C. § 2000e et seq.)*

36. The averments in foregoing paragraphs 1-35 of this Complaint are incorporated herein as though set forth in full.

**RESPONSE: BGC realleges its responses to paragraphs 1-35 of the Complaint as if fully restated herein.**

37. The actions, inaction, practices and policies of Defendant and its agents, servants, employees and representatives described in the foregoing paragraphs of this Complaint constitute unlawful and intentional discrimination against Plaintiff based on her pregnancy in direct violation of 19 Del. C. § 710, et seq. and 42 U.S.C. § 2000e.

**RESPONSE: BGC denies the allegations of paragraph 37 of the Complaint.**

38. As a direct result of the unlawful actions, inactions, and practices of Defendant and its agent, servants, employees and representatives described in the foregoing paragraphs of this Complaint, Plaintiff has sustained (a) emotional distress and (b) loss of wages, raises, bonuses and benefits.

**RESPONSE: BGC denies the allegations of paragraph 38 of the Complaint.**

39. As a direct result of the unlawful actions, inactions, and practices of Defendant and its agents, servants, employees and representatives described in the foregoing paragraphs of this Complaint, Plaintiff has been further required to incur and/or continues to incur (a) legal expenses and legal fees and (b) other miscellaneous costs.

**RESPONSE: BGC denies the allegations of paragraph 39 of the Complaint.**

## COUNT II
*(Constructive/Wrongful Discharge in Violation of Public Policy)*

40. The averments in foregoing paragraphs 1-39 of this Complaint are incorporated herein as though set forth in full.

**RESPONSE: BGC realleges its responses to paragraphs 1-39 of the Complaint as if fully restated herein.**

41. Plaintiff was subjected to adverse employment by Defendant when it removed Plaintiff from her job because she became pregnant.

**RESPONSE: BGC denies the allegations of paragraph 41 of the Complaint.**

42. As a result, Plaintiff was left with no other choice but to terminate her employment.

**RESPONSE: BGC denies the allegations of paragraph 42 of the Complaint.**

43. Plaintiff's termination of her employment constitutes a constructive discharge in violation of the public policy of anti-discrimination.

**RESPONSE: BGC denies the allegations of paragraph 43 of the Complaint.**

## COUNT III
*(Breach of the Covenant of Good Faith and Fair Dealing)*

44. The averments in foregoing paragraphs 1-43 of this Complaint are incorporated herein as though set forth in full.

**RESPONSE: BGC realleges its responses to paragraphs 1-43 of the Complaint as if fully restated herein.**

45.    The actions of Defendant constitute a violation of the Covenant of Good Faith and Fair Dealing implicit in every employment agreement.

**RESPONSE: BGC denies the allegations of paragraph 45 of the Complaint.**

46.    Defendant breached the Covenant of Good Faith and Fair Dealing to Plaintiff by constructively discharging Plaintiff when it removed her from her position because of her pregnancy.

**RESPONSE: BGC denies the allegations of paragraph 46 of the Complaint.**

47.    Defendant's discrimination was willful, wanton, and malicious. As a result, Plaintiff is entitled to an award of compensatory and punitive damages.

**RESPONSE: BGC denies the allegations of paragraph 47 of the Complaint.**

48.    The above-stated damages were not the result of any act or omission on the part of the Plaintiff.

**RESPONSE: BGC denies the allegations of paragraph 48 of the Complaint.**

WHEREFORE, Plaintiff, Rosemarie McMullen, respectfully requests this Court enter judgment against Defendant, in her favor for damages suffered by her, due to Defendant's actions, including, but not limited to, compensatory damages, punitive damages, attorneys' fees, the costs of this litigation, pre- and post-judgment interest, and such other further relief as this Court deems just and proper.

**RESPONSE: BGC denies that McMullen is entitled to the relief she seeks in the closing paragraph of the Complaint.**

### AFFIRMATIVE DEFENSES

1.    The Complaint fails to state a claim upon which relief may be granted.

2.    The Complaint is barred by the applicable statute of limitations.

WHEREFORE, for the foregoing reasons, BGC prays that judgment be entered in its favor and against Plaintiff, and that BGC be awarded its attorneys fees and costs and such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Defendant demands a trial by jury of all issues so triable.

                                            BALICK & BALICK LLC

                                            Adam Balick (#2718)
                                            Joanne Ceballos (#2854)
                                            711 King Street
                                            Wilmington, Delaware 19801
                                            (302) 658-4265
                                            Attorneys for Defendant
                                            Boys and Girls Clubs of Delaware, Inc.

Dated: May 9, 2007